```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :   23-CV-7870 (JGK) (RWL)
OLEG KOZIAR and RIMMA KOZIAR,                               :
                                                            :
                                        Plaintiffs,         :   REPORT AND RECOMMENDATION
                                                            :   TO HON. JOHN G. KOELTL:
                - against -                                 :   DAMAGES INQUEST
                                                            :
BLAMMO, LTD. ET AL.,                                        :
                                                            :
                                        Defendants.         :
                                                            :
------------------------------------------------------------X
```

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

Oleg and Rimma Koziar (collectively, "Plaintiffs") asserted claims to recover their losses from Blammo, Ltd. ("Blammo") and Jack Stars a/k/a Evgeny Melnik ("Melnik") (collectively, "Defendants") alleging that they were victims of an international fraud scheme perpetrated through a fictitious cryptocurrency trading website called "Blammo." Plaintiffs claim that Defendants unlawfully utilized the Blammo platform and related companies and individuals to steal $669,400.10 from the Plaintiffs in violation of the Computer Fraud and Abuse Act ("CFAA"), as well as through common law conversion and fraud. District Judge John G. Koeltl granted Plaintiffs' motion for default judgment against Defendants Blammo Ltd. and "Jack Stars" a/k/a "Evgeny Melnik" and referred this matter to me to conduct an inquest on damages. For the reasons set forth below, I recommend the Court award the Plaintiffs, collectively (1) $644,400.10 in damages and

1

(2) pre-judgment interest at the statutory rate of 9% starting from May 13, 2023, as calculated by the Clerk of Court.

## FACTS[1]

Plaintiffs are a retired couple, currently living in northeastern Pennsylvania. (AVC ¶¶ 3-4, 16-17.) Plaintiffs immigrated to the United States from Ukraine in the 1980s. (AVC ¶¶ 15.)

Rimma Koziar first learned of Blammo, a self-described "cryptocurrency exchange charging low fees," from an advertisement on Facebook. (AVC ¶ 18.) Blammo promoted itself online as a reputable cryptocurrency trading platform with hundreds of employees, billions of dollars in assets under management, and offices in New York, London, and Los Angeles. (AVC ¶¶ 19-21.) Blammo advertised its relationship with real companies like Chain Tech AG and Matrix Trust Co., Ltd. and backing by "top investors in the East and West," including recognized venture capital firms Lightspeed Venture Partners, IDG Capital, and Tiger Global. (AVC ¶ 19.)

Despite having never traded cryptocurrency or securities of any kind (AVC ¶ 18),[2] Plaintiffs made an initial investment of $620.00 of cryptocurrency via BitCoin ATM transfer

---

[1] The facts are drawn primarily from the Amended Verified Complaint (Dkt. 8 ("AVC")). References are also made to the First Declaration of Alexander G. Malyshev, filed on February 12, 2024, at Dkt. 18 ("First Malyshev Decl."); the Declaration of Oleg Koziar, filed on February 21, 2024, at Dkt. 23-1 ("O. Koziar Decl."); Plaintiffs' Statement of Damages, at Dkt. 37 ("Stmt. Dmgs."); the Second Declaration of Alexander G. Malyshev, filed on May 1, 2024, at Dkt. 40 ("Second Malyshev Decl."); and Plaintiffs' Proposed Findings of Fact and Conclusions of Law, at Dkt. 49 ("FFCL").

[2] Plaintiff Rimma Koziar did amass a retirement account valued at approximately $176,000. (AVC ¶ 17.) However, she did not independently trade holdings in the retirement account. (AVC ¶ 18.)

on or about February 15, 2023. (AVC ¶ 22.) Blammo "account managers" then contacted Plaintiffs and directed them to create accounts and "wallets" on external cryptocurrency exchanges (e.g., Coinbase, Kraken, Bitcoin Depot, and Crypto.com).[3] (AVC ¶ 23.)

Plaintiffs believed they were engaging with individuals on behalf of Blammo who, like them, had immigrated from Eastern Europe to areas in the United States and Western Europe. (AVC ¶¶ 24-25.) Instead, those individuals are believed to be Russian nationals based out of former Soviet Republics. (AVC ¶¶ 6, 25; *see also* First Malyshev Decl. ¶ 6.) Defendants communicated with Plaintiffs via text and the messaging platform Telegram and exploited their ethnic affinity and Plaintiffs' inexperience in cryptocurrency trading to further Defendants' scheme. (*See* AVC ¶¶ 18, 23-25.)

After gaining their trust, Blammo representatives instructed Plaintiffs to transfer money from their bank accounts to their personal cryptocurrency wallets and then transfer cryptocurrency to Defendants' cryptocurrency wallets. (AVC ¶¶ 25-26.) Defendants also directed Plaintiffs to transfer cryptocurrency directly to them via Bitcoin ATMs. (*Id.*) Throughout the period of investment, Plaintiffs' Blammo accounts showed steady profits and millions of dollars in value. (AVC ¶ 27.) Defendants used the fictitious profits as pretext to charge Plaintiffs thousands of dollars in fictitious margin fees, taxes, and processing fees. (AVC ¶¶ 27, 29-32.) At the same time, Defendants deterred Plaintiffs from making withdrawals by conditioning withdrawal on thousands of dollars of fictitious taxes and an armored car fee, and then made various excuses to explain why Plaintiffs'

---

[3] Those representatives are named individually as John Doe and Jane Doe defendants (AVC ¶¶ 10, 24), but the docket does not include any proof that they have been identified or served.

funds could not be withdrawn, such as that an alleged audit had been triggered by unauthorized trades conducted by one of Defendants' employees. (*See* AVC ¶¶ 30-31.)

In total, between February 15, 2023 and August 9, 2023, Plaintiffs made payments to Defendants totaling $669,400.10, inclusive of deposits to fund cryptocurrency wallets and payment of fictitious fees and taxes. (*See* AVC ¶ 28.) To make those payments, Plaintiffs used all of their liquid savings (AVC ¶ 16), liquidated Plaintiff Rimma Koziar's retirement account (*see* AVC ¶ 17) and borrowed money from a friend (AVC ¶ 29).

In two instances, Plaintiffs executed payment by wire transfer to accounts at U.S. banks. (AVC ¶ 32.) The first wire transfer in the amount of $55,480.00 was to an account in the name of Alamas Group Europe OU ("Alamas") at Community Federal Savings Bank in Queens, New York.[4] (AVC ¶¶ 7, 32.) Money transfer records indicate that after the funds were wired to the Alamas account in New York, they were deposited into an Alamas account in Estonia and then transferred out. (*See* AVC ¶¶ 7, 34.) The second wire transfer in the amount of $44,520.00 was to an account in Charlotte, North Carolina, under the name of Irish private limited company Serpstat Global, Ltd. ("Serpstat"). (AVC ¶ 32.) The Serpstat wire was returned to Plaintiffs, but Plaintiffs allege it is "likely that the Serpstat's bank accounts w[ere] intercepted by the cybercriminals operating the Blammo scheme." (AVC ¶ 33.)

As of the date the AVC was filed, Plaintiffs have been unable to withdraw any funds from their Blammo accounts despite complying with Defendants' instructions and paying all demanded fees. (AVC ¶ 35; *see also* FFCL ¶ 12.) And, despite their efforts,

---

[4] Voluntarily dismissed Defendant Andrii Suslenko is identified as the registered owner of Alamas Group Europe OU. (AVC ¶ 8; First Malyshev Decl., Ex. B at ECF 6-7.)

4

Plaintiffs have been unable to successfully make contact with representatives of Blammo. (*See* AVC ¶ 21; First Malyshev Decl. ¶ 2 and Ex. A at ECF 5-6; O. Koziar Decl. ¶ 3 and Ex. A at ECF 5.)

## PROCEDURAL HISTORY

Plaintiffs commenced this action on September 5, 2023. (Dkt. 1.) At the time the Complaint was filed, the names and identities of several John Doe defendants were unknown. Plaintiffs sought and obtained third-party discovery from several banks and Domains by Proxy, LLC to ascertain the identify of these defendants.[5] (*See* Dkts. 4-7.) On January 8, 2024, Plaintiffs filed an Amended Verified Complaint, naming Blammo, Ltd. (a fictitious entity); Alamas Group Europe OU; Andrii Suslenko; "Jack Stars" a/k/a "Evgeny Melnik"; John Doe and Jane Doe numbers 1 through 10; and ABC Company numbers 1 through 10, as defendants. (Dkt. 8.) The Court entered an order authorizing alternative service on the known defendants – Blammo, Melnik, Alamas, and Suslenko – on February 16, 2024 (Dkt. 22), and service of the summonses and the AVC was effected on them on February 21, 2024 (Dkt. 23).

On March 18, 2024, the Court issued an order extending the deadline for the defendants to respond to the AVC to April 1, 2024. (Dkt. 24.) The order was served on the defendants on March 19, 2024 (*see* Dkt. 25), and none of them answered or appeared. On April 8, 2024, the Clerk of Court issued a Certificate of Default as to Defendants Blammo and Melnik. (Dkt. 30.) Plaintiffs moved for default judgment on April

---

[5] Domains by Proxy, LLC is an internet company that offers domain privacy services through partner domain registrars such as GoDaddy. Blammo's website was hosted by GoDaddy.com, LLC. (First Malyshev Decl., Ex. C at ECF 4; FFCL ¶ 2.)

5

26, 2024. (Dkts. 35-38.) On April 29, 2024, Judge Koeltl issued an order, which was timely served, directing the Defendants to show cause why default judgment should not be entered against them. (Dkts. 39-40).

Plaintiffs entered into a settlement with Alamas and Suslenko, who claimed to be victims of the Blammo fraud, pursuant to which Plaintiffs received $25,000.00 in exchange for dismissal. (FFCL ¶ 14.) The Court voluntarily dismissed Alamas and Suslenko on May 16, 2024 (Dkt. 44.), and, on June 4, 2024, granted the motion for default judgment against Blammo and Melnick (Dkt. 46). The matter has been referred to me for inquest on damages and other appropriate relief. (Dkt. 45.) Pursuant to a scheduling order dated June 4, 2024 (Dkt. 47), Plaintiffs filed and served proposed findings of fact and conclusions of law (Dkt. 49). Despite being duly served with the summonses and AVC, order to show cause, and inquest scheduling order, neither Blammo nor Melnick ever responded or appeared in the action.

## JURISDICTION

The Court has original federal subject matter jurisdiction by virtue of the CFAA claim, *see* 28 U.S.C. § 1331, and supplemental jurisdiction over the state common law claims, which share the same nucleus of operative facts as Plaintiffs' CFAA claim, *see id*. § 1367. The Court also has subject matter jurisdiction because there is complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000.00. 28 U.S.C. § 1332.[6] Venue is proper in this District, and the Court has personal jurisdiction

---

[6] The Plaintiffs are domiciled in the Commonwealth of Pennsylvania. (*See* AVC ¶¶ 3-4, 15.) Defendant "Jack Stars" a/k/a "Evgeny Melnik" is likely domiciled in Moldova. (*See* AVC ¶ 9; First Malyshev Decl., Ex. C at ECF 2, 5.) Blammo, Ltd. is a fictitious name; however, based on the allegations in the AVC, Blammo, Ltd. represented that it has offices in London, New York, and Los Angeles; holds a Hong Kong Trust Company

6

over the Defendants given their substantial business activities in the state of New York, including an alleged office location (*see* AVC ¶¶ 6, 21, 25), and use of a bank account and banking locations in New York, New York to carry out the alleged fraud scheme (*See* AVC ¶¶ 7, 34).

## LEGAL STANDARDS

When a defendant defaults, all well-pled facts alleged in the complaint, except those relating to the amount of damages, must be accepted as true. *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) ("It is an ancient common law axiom that a defendant who defaults thereby admits all well-pleaded factual allegations contained in the complaint") (internal quotations marks and citation omitted); *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) (trial court is "required to accept all of the [plaintiff's] factual allegations as true and draw all reasonable inferences in its favor"). "This principle applies regardless of whether default is entered as a discovery sanction or for failure to defend." *Walpert v. Jaffrey*, 127 F. Supp.3d 105, 129 (S.D.N.Y. 2015) (internal quotation marks and citation omitted). The court also may rely on factual allegations pertaining to liability contained in affidavits and declarations submitted by the plaintiff. *See, e.g.*, *Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 54 (2d Cir. 1993); *Fustok v. ContiCommodity Services, Inc.*, 873 F.2d 38, 40 (2d Cir. 1989). Nonetheless, the court "must still satisfy itself that the plaintiff has established a sound legal basis upon which

---

License; and wholly owns Swiss-incorporated Chain Tech AG and Matrix Trust Company Limited. (*See* AVC ¶¶ 6, 19-21.) The unidentified John Doe and Jane Doe defendants, purporting to work for and with Blammo, are likely domiciled in areas of Eastern Europe and Russia. (*See* AVC ¶¶ 6, 25.) The now voluntarily dismissed defendants Alamas and Suslenko are domiciled in Estonia and Ukraine respectively. (*See* AVC ¶¶ 7-8; First Malyshev Decl., Ex. B.)

liability may be imposed." *Shld, LLC v. Hall*, No. 15-CV-6225, 2017 WL 1428864, at *3 (S.D.N.Y. Apr. 20, 2017) (internal quotation marks and citation omitted); *see Finkel*, 577 F.3d at 84.

Once liability has been established, a plaintiff must provide admissible evidence establishing the amount of damages with reasonable certainty. *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Division of Ace Young Inc.*, 109 F.3d 105, 111 (2d Cir. 1997); *see also Lenard v. Design Studio*, 889 F. Supp.2d 518, 527 (S.D.N.Y. 2012) (in an inquest following a default, "[a] plaintiff must … substantiate a claim with evidence to prove the extent of damages").

To assess whether the plaintiff has established a sufficient basis for damages, a court has the discretion, but is not required, to hold a hearing. *See* Fed. R. Civ. P. 55(b)(2); *Fustok*, 873 F.2d at 40. An inquest into damages may be conducted on the papers without an evidentiary hearing where there is a sufficient basis on which to make a calculation. *See Bricklayers & Allied Craftworkers Local 2, Albany, New York Pension Fund v. Moulton Masonry & Construction, LLC*, 779 F.3d 182, 189 (2d Cir. 2015)*; Tamarin*, 13 F.3d at 53-54; *Maldonado v. La Nueva Rampa, Inc.*, No. 10-CV-8195, 2012 WL 1669341, at *2 (S.D.N.Y. May 14, 2012). There is sufficient basis to do so here. No party has requested a hearing, and the Court has determined that none is needed.

## LIABILITY

Plaintiffs' AVC asserts three causes of action against Defendants, including computer fraud under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, common

law conversion, and common law fraud. To obtain damages, Plaintiffs must establish Defendants' liability for at least one of their claims. The AVC ostensibly does so.

### A.  CFAA Claim

The CFAA is a statutory scheme "aimed at preventing the typical consequences of hacking." *Van Buren v. United States*, 593 U.S. 374, 392, 141 S. Ct. 1648, 1660 (2021) (internal quotation marks and citation omitted). The CFAA subjects to criminal liability any individual who "intentionally accesses a protected computer without authorization" or "exceeds authorized access" and thereafter carries out a prohibited action set forth in the statute. *See* 18 U.S.C. §§ 1030(a)(1)-(7). Though predominantly a criminal statute, the CFAA also permits an individual who suffers damage or loss as defined in the statute to bring a civil action for damages or injunctive relief against the violator. *Id*. § 1030(g) ("Any person who suffers damage or loss by reason of violation of [the CFAA] may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief"). Plaintiffs have neither identified or briefed violation of a specific provision of the CFAA allegedly violated, nor identified or briefed any specific facts demonstrating unauthorized access of a protected computer. Accordingly, the Court does not discuss further this asserted basis of liability. Regardless, as discussed below, the damages sought by Plaintiffs are recoverable under Plaintiffs' claims for conversion and fraud.

### B.  Conversion Claim

Under New York law, the "two key elements" of conversion are "(1) plaintiff's possessory right or interest in the property and (2) the defendant's dominion over the

9

property or interference with it, in derogation of plaintiff's rights."[7] *V&A Collection, LLC v. Guzzini Properties Ltd.*, 46 F.4th 127, 133 (2d Cir. 2022) (internal quotation marks and citations omitted); *see also Thyroff v. Nationwide Mutual Insurance Co.*, 460 F.3d 400, 403-04 (2d Cir. 2006) ("According to New York law, '[c]onversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights'") (quoting *Vigilant Insurance Co. of America v. Housing Authority*, 87 N.Y.2d 36, 44, 660 N.E.2d 1121, 1126, 637 N.Y.S.2d 342, 347 (1995). "To state a claim of conversion, a plaintiff must allege that '(1) the party charged has acted without authorization, and (2) exercised dominion or a right of ownership over property

---

[7] The Court has not conducted a choice of law analysis because "[w]hen there is no actual conflict between the laws of the jurisdictions involved," as here, "there need not be a determination of which law to apply because the application of either jurisdiction's law would provide the same result." *LiquidX Inc. v. Brooklawn Capital, LLC*, 254 F. Supp.3d 609, 616 (S.D.N.Y. 2017) (internal quotation marks and citation omitted); *see also Fieger v. Pitney Bowes Credit Corp.*, 251 F.3d 386, 393 (2d Cir. 2001) ("A federal trial court sitting in diversity jurisdiction must apply the law of the forum state to determine the choice-of-law. In New York, the forum state in this case, the first question to resolve in determining whether to undertake a choice of law analysis is whether there is an actual conflict of laws. It is only when it can be said that there is no actual conflict that New York will dispense with a choice of law analysis") (internal quotation marks and citations omitted). For Plaintiffs' conversion and fraud claims, there is no conflict, as the common law elements are not materially different under New York law (set forth in the text above) and Pennsylvania law. *See, e.g., Eagle v. Morgan*, No. Civ. 11-4303, 2013 WL 943350, at *10 (E.D. Pa. March 12, 2013) ("Under Pennsylvania law, the elements of conversion are: (1) the deprivation of another's right of property, or use or possession of a chattel, or other interference therewith; (2) without the owner's consent; and (3) without legal justification" (internal quotation marks and brackets omitted) (quoting *Universal Premium Acceptance Corp. v. York Bank & Trust Co.*, 69 F.3d 695, 704 (3d Cir. 1995)); *West Chester University Foundation v. MetLife Insurance Co. of Connecticut*, 259 F. Supp.3d 211, 218 (E.D. Pa. 2017) ("To prove fraud under Pennsylvania law requires a showing of the following elements: (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance") (internal quotation marks omitted) (quoting *Gibbs v. Ernst*, 538 Pa. 193, 207, 647 A.2d 882, 889 (Pa. 1994)).

belonging to another, (3) the rightful owner makes a demand for the property, and (4) the demand for the return is refused.'" *Lefkowitz v. Bank of New York*, 676 F. Supp.2d 229, 251 (S.D.N.Y. 2009) (quoting *Seanto Exports v. United Arab Agencies*, 137 F. Supp.2d 445, 451 (S.D.N.Y. 2001) (bracket omitted)).

Here, the well-pled facts set out in the AVC, when accepted as true, establish that Plaintiffs invested funds into Blammo "wallets" to be traded across various cryptocurrency exchanges and wired funds directly to bank accounts intercepted or manipulated by Defendants. (AVC ¶¶ 22, 26-34.) The allegations show that Defendants exercised dominion over the funds. For example, Defendants transferred more than $55,000.00 of Plaintiffs' funds from an Alamas bank account located in Queens, New York to an Alamas bank account located in Estonia. (AVC ¶¶ 7, 34.) On several occasions, Plaintiffs inquired about withdrawing their funds and profits and paid supposed "fees" and "taxes" to do so but were unable to withdraw any funds. (AVC ¶¶ 27, 29-32, 35.) Aside from the Serpstat wire, which was returned, and $25,000.00 received from settling with Defendants Alamas and Suslenko, Plaintiffs have been unable to withdraw any of the converted funds. (AVC ¶ 35; FFCL ¶ 14.) In short, Plaintiffs had a right to withdraw their funds and supposed profits, yet Defendants never returned them, thereby establishing conversion.

**C. Fraud Claim**

To prevail on a common law fraud claim under New York law, a plaintiff must prove: "(1) a misrepresentation or omission of material fact; (2) that the defendant knew to be false; (3) that the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) that caused injury to the plaintiff." *Hunt v. Enzo Biochem, Inc.*, 530 F. Supp.2d 580, 592 (S.D.N.Y. 2008) (citing *Crigger v. Fahnestock &*

11

*Co.*, 443 F.3d 230, 234 (2d Cir. 2006); *Wynn v. AC Rochester*, 273 F.3d 153, 156 (2d Cir. 2001)). Further, under New York law, a common law fraud claim "requires a showing of proximate causation." *Hunt*, 530 F.Supp.2d at 592 (citing *Suez Equity Investors, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 104-05 (2d Cir. 2001) (internal quotation marks omitted)).

The AVC sets forth well-pled facts that, when accepted as true, demonstrate each of the requisite elements for a common law fraud claim. Among other misrepresentations and omissions of material fact, Defendants misrepresented: that Blammo was a legitimate cryptocurrency trading platform with hundreds of employees, billions of dollars in assets under management, and offices in New York, London and Los Angeles; that Blammo was backed by reputable investors and connected with recognized companies; that Blammo's representatives were ex-patriots living in the United States and Western Europe; that Plaintiffs' accounts were making steady profits; and that Plaintiffs could withdraw their profits when, in fact, they could not. (AVC ¶¶ 19-21, 25, 27-32.)

Based on the facts alleged, Defendants likely knew that these representations were false and intended Plaintiffs to rely on them. Most notably, since this action has commenced, Blammo's website has been deleted, and Plaintiffs have been unable to contact individual Defendants about the possibility of withdrawing their funds or basic information such as the addresses of Blammo's New York, London, and Los Angeles offices. (*See* AVC ¶ 21; First Malyshev Decl. ¶ 2 and Ex. A at ECF 5-6; O. Koziar Decl. ¶ 3 and Ex. A at ECF 5.) Any emails sent to Blammo's email address cannot be delivered and instead "bounce back" (AVC ¶ 21), and certain Blammo representatives' Telegram accounts have been deleted. (*See* Second Malyshev Decl., Ex. B, Dkt. 40-2 at ECF 4-

12

5.) Further, Defendant "Evgeny Melnik" utilized the name "Jack Stars," an alias, to register Blammo's domain address. (AVC ¶ 9; *see also* First Malyshev Decl. ¶ 5 and Ex. C.)

Overall, Defendants' goal was to "extract every single dollar that Plaintiffs ha[d] or c[ould] borrow." (*See* AVC ¶ 31.) Plaintiffs reasonably relied on Defendants' misrepresentations by investing their funds at Defendants' direction in various cryptocurrency wallets, as a result of which they incurred a net loss of funds they invested with Blammo. (*See* AVC ¶¶ 22, 26-32.) Plaintiffs' well-pled allegations thus establish Defendants' liability for fraud.

### DAMAGES

As Defendants' liability for conversion and fraud has been established, the Court turns to evaluating damages and other relief. Plaintiffs seek: (1) out-of-pocket losses totaling $644,400.10 (the amount they deposited into the Blammo scheme minus $25,000.00 they obtained from settling defendants); and (2) pre-judgment interest. Plaintiff has provided sufficient evidence to support each of those items.

**A.   Net Loss Damages**

Plaintiffs seek to recover their "out-of-pocket" losses. (FFCL ¶¶ 13, 18; s*ee also* Stmt. Dmgs.) Such losses are recoverable as damages.

For conversion, the usual measure of damages is "the value of the property at the time and place of conversion, plus interest." *Red Hook Container Terminal, LLC v. South Pacific Shipping Co.*, No. 19-0287 (L), 2021 WL 549296, at *3 (2d Cir. Nov. 23, 2021) (summary order) (internal quotation marks omitted) (quoting *Fantis Foods, Inc. v. Standard Importing Co.*, 49 N.Y.2d 317, 326, 402 N.E.2d 122, 125, 425 N.Y.S.2d 783,

13

786 (1980)); *Al Hirschfeld Foundation v. Margo Feiden Galleries Ltd.*, 328 F. Supp.3d 232, 237 (S.D.N.Y. 2018) (same); *Marketxt Holdings Corp. v. Engel & Reiman, P.C.*, 693 F. Supp.2d 387, 395 (S.D.N.Y. 2010) (same). Likewise, under New York law, the measure of damages for fraud is governed by the "out-of-pocket" rule. A plaintiff can only recover for "the actual pecuniary loss sustained as a direct result of the wrong." *Hudson Optical Corp. v. Cabot Safety Corp.*, 162 F.3d 1148, 1998 WL 642471, at *2 (2d Cir. March 25, 1998) (summary order) (internal quotation marks omitted) (quoting *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 420-21, 646 N.Y.S.2d 76, 668 N.E.2d 1370 (1996)); *see also Brown v. Stinson*, 821 F. Supp. 910, 916 (S.D.N.Y. 1993) (noting "the proper measure of damages for fraud under New York law is plaintiff's out-of-pocket loss").

Plaintiffs' damages under both causes of action are essentially identical and readily determinable from the information provided about their deposits, payments, and wire transfers. The Court finds the information provided to be sufficiently reliable to reasonably establish the damages asserted. Plaintiffs' total net losses, minus the $25,000 obtained via settlement with Alamas and Suslenko amount to $644,400.10 and are tabulated in the following chart:

| Date | Amount | Transaction |
|---|---|---|
| February 15, 2023 | $620.00 | Bitcoin ATM Purchase & Transfer |
| February 21, 2023 | $50,000.00 | Coinbase Deposit |
| March 7, 2023 | $80,000.00 | Coinbase Deposit |
| March 14, 2023 | $190,000.00 | Coinbase Deposit |
| June 28, 2023 | $150,000.00 | Coinbase Deposit |
| July 7, 2023 | $55,480.00 | Domestic Wire Transfer to Alamas |
| July 18, 2023 | $8,500.00 | Kraken Deposit |
| July 21, 2023 | $15,000.00 | Bitcoin ATM Purchase & Transfer |
| July 21, 2023 | $9,500.00 | Crypto.com Deposit |
| July 24, 2023 | $11,000.00 | Crypto.com Deposit |
| July 25, 2023 | $5,800.10 | Bitcoin ATM Purchase & Transfer |
| July 27, 2023 | $14,800.00 | Bitcoin ATM Purchase & Transfer |
| July 27, 2023 | $14,900.00 | Bitcoin ATM Purchase & Transfer |
| July 28, 2023 | $15,000.00 | Bitcoin ATM Purchase & Transfer |
| July 28, 2023 | $10,800.00 | Bitcoin ATM Purchase & Transfer |
| August 3, 2023 | $10,000.00 | Bitcoin ATM Purchase & Transfer |
| August 7, 2023 | $10,000.00 | Bitcoin ATM Purchase & Transfer |
| August 9, 2023 | $10,000.00 | Bitcoin ATM Purchase & Transfer |
| August 9, 2023 | $8,000.00 | Bitcoin ATM Purchase & Transfer |
| **TOTAL** | **$669,400.10**[8] | |
| | - 25,000.00 | Funds Received Via Settlement |
| **NET LOSS DAMAGES** | **$644,400.10** | |

---

[8] The AVC alleges Plaintiffs incurred $669,400.00 in losses. (AVC ¶¶ 1, 5, 28, 35, 48.) However, the transactions alleged in Plaintiffs' table summarizing the various payments total $669,400.10. (*See* AVC ¶ 28.) The table of payments appearing in the AVC also includes a Bitcoin transfer of 0.0338761 BTC on July 24, 2023, via a Crypto.com Bitcoin wallet. (*Id.*) That transaction, however, is not listed in subsequent iterations of the table in Plaintiffs' Statement of Damages (Dkt. 37) or Plaintiffs' Proposed Findings of Fact and Conclusions of Law (Dkt. 49), and Plaintiffs have not provided a dollar valuation for that transfer. Accordingly, the Court excludes it from damages awarded.

B. **Pre-Judgment Interest**

In a diversity case such as this one, state law governs the award of pre-judgment interest.[9] *Schipani v. McLeod*, 541 F.3d 158, 164-65 (2d Cir. 2008). New York law provides that pre-judgment interest "shall be recovered upon a sum awarded because of a breach of performance of a contract, or because of an act or omission depriving or otherwise interfering with title to, or possession or enjoyment of, property." NY CPLR § 5001(a); *see also Hydro Investors, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 22 (2d Cir. 2000) ("New York law instructs courts to award prejudgment interest as a matter of right when a defendant's act or omission deprives or otherwise interferes with title to, or possession or enjoyment of, property") (internal quotation marks and brackets omitted) (quoting NY CPLR § 5001(a)). Where, as here, a party is entitled to pre-judgment interest

---

[9] Pre-judgment interest may be subject to choice of law analysis. *See Schwimmer v. Allstate Insurance Co.*, 176 F.3d 648, 650 (2d Cir. 1999) ("Under New York choice of law rules, the law of the jurisdiction that determines liability governs the award of pre-judgment interest"); *see also Entron, Inc. v. Affiliated FM Insurance Co.*, 749 F.2d 127, 131 (2d Cir. 1984) ("under New York choice of law principles, the allowance of prejudgment interest is controlled by the law of [the state], whose law determined liability on the main claim"). Here, however, because Defendants have defaulted, and Plaintiffs have not raised any choice-of-law issue, "it can be said that they have consented to the application of the forum state's law." *See Felice Fedder Oriental Art, Inc. v. Scanlon*, 708 F. Supp. 551, 553 (S.D.N.Y. 1989) (citing *Clarkson Co. v. Shaheen,* 660 F.2d 506, 512 n.4 (2d Cir. 1981), *cert. denied,* 455 U.S. 990, 102 S. Ct. 1614 (1982)); *see also Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000) (finding that where "[t]he parties' briefs assume that New York law controls, ... such implied consent is sufficient to establish choice of law") (internal quotation marks, citation, and elision omitted); *Henneberry v. Sumitomo Corp. of America*, No. 04-CV-2128, 2005 WL 991772, at *5, n.3 (S.D.N.Y. Apr. 27, 2005) ("Where the parties so assume, the Court need not address choice of law *sua sponte*"); *Greater Houseware Inc. v. Zohar Investment Ventures LLC*, No. 23-CV-8029, 2024 WL 4648144, at *4 (E.D.N.Y. Aug. 30, 2024) (applying New York law where the parties had not raised choice of law as an issue and defendant defaulted). The Court thus applies New York law of pre-judgment interest.

as a matter of right, New York law does not afford the trial court any discretion to refuse such an award. *See New England Insurance Co. v. Healthcare Underwriters Mutual Insurance Co.*, 352 F.3d 599, 602-03 (2d Cir. 2003). The statutory rate of pre-judgment interest prescribed by New York law is 9% per annum calculated on a simple-interest basis. NY CPLR § 5004.

As for the timeframe for calculating pre-judgment interest, the New York rule directs that "[i]nterest shall be computed from the earliest ascertainable date the cause of action existed." NY CPLR § 5001(b). However, New York law "grants courts wide discretion in determining a reasonable date from which to award pre-judgment interest." *Conway v. Icahn & Co.*, 16 F.3d 504, 512 (2d Cir. 1994); NY CPLR § 5001(b) ("Where ... damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date"). Given that Plaintiffs invested over a period of time, it is more appropriate to use the midpoint of the investment period. *See Living the Dream Films, Inc. v. Aloris Entertainment, LLC*, No. 20-CV-6982, 2021 WL 5822233, at *2-3 (S.D.N.Y. Dec. 7, 2021) (using a reasonable intermediate date within the investment period to calculate pre-judgment interest); *Bolivar v. FIT International Group Corp.*, No. 12-CV-781, 2017 WL 11473766, at *23 (S.D.N.Y. March 16, 2017) (same), *R. & R. adopted*, 2019 WL 4565067 (S.D.N.Y. Sept. 20, 2019); *Lowry v. Edelman*, No. 21-CV-7861, 2024 WL 1073149, at *9 (S.D.N.Y. Feb. 15, 2024) (same), *R. & R. adopted as modified*, 2024 WL 1526176 (S.D.N.Y. Apr. 8, 2024). That date is May 13, 2023. Plaintiffs thus are entitled to an award of pre-judgment interest at the statutory rate of 9% from May 13, 2023, to the date of judgment as calculated by the Clerk of Court.

## CONCLUSION

For the foregoing reasons, I recommend awarding Plaintiffs (1) $644,400.10 in damages representing Plaintiffs' out-of-pocket net losses set forth in the chart above, less the $25,000.00 received from settling defendants, and (2) pre-judgment interest at the statutory 9% rate starting from May 13, 2023, as calculated by the Clerk of Court.

## DEADLINE FOR FILING OBJECTIONS AND PRESERVING APPEAL

Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days to file written objections to this Report and Recommendation.  Any party shall have fourteen (14) days to file a written response to the other party's objections.  Any such objections and responses shall be filed with the Clerk of the Court, with courtesy copies delivered to the Chambers of the Honorable John G. Koeltl, United States Courthouse, 500 Pearl Street, New York, New York 10007, and to the Chambers of the undersigned, at United States Courthouse, 500 Pearl Street, New York, New York 10007.  Any request for an extension of time for filing objections must be addressed to Judge Koeltl.  **Failure to file timely objections will result in a waiver of the right to object and will preclude appellate review.**

Respectfully submitted,

_____
ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated: November 27, 2024
   New York, New York

Copies transmitted to all counsel of record.